140 So.2d 445 (1962)
Everett Raymond HURLEY and Mary Ilene Courtney Hurley
v.
J. C. PENNEY COMPANY, E. W. Russell and Audubon Insurance Company.
No. 5521.
Court of Appeal of Louisiana, First Circuit.
April 9, 1962.
Rehearing Denied May 16, 1962.
Certiorari Denied June 15, 1962.
*446 Dodd, Hirsch, Barker, Avant & Wall, by John L. Avant, Baton Rouge, for appellant.
Taylor, Porter, Brooks, Fuller & Phillips, by John I. Moore, Sanders, Miller, Downing, Rubin & Kean, by R. Gordon Kean, Jr., Baton Rouge, for appellee.
Before LOTTINGER, LANDRY and REID, JJ.
LOTTINGER, Judge.
This is a suit in tort resulting from an accident wherein petitioner, Mrs. Mary Hurley suffered the loss of an eye. The petitioners are Mrs. Hurley, who claims personal damages in the sum of $75,000.00, and her husband, Mr. Everett Hurley, who claims medical expenses in the amount of $3,118.00. The defendants are E. W. Russell, the landlord of the Hurleys, Audubon Insurance Company, the liability insurance carrier of Mr. Russell, and J. C. Penney Company, who had sold the lawn mower which allegedly caused the loss to the petitioners. The Lower Court rendered judgment in favor of defendants dismissing petitioners' action, and the petitioners have taken this appeal.
Petitioner, E. R. Hurley, is the tenant of defendant, E. W. Russell. Petitioners live together in the duplex apartment rented from said defendant at 3810 Sherwood Drive, in the City of Baton Rouge, Louisiana. Several weeks prior to the accident in question, Mr. Russell, together with others, had taken the old roof off the house in question, and replaced it with a new roof. The petitioners were aware of this repair work. The old roof, as it was dislodged from the house, was shoved to the ground in piles. After completion of the work, the old roofing was removed, the yard was raked, and Mr. Russell and the parties who helped him got on their hands and knees to remove any roofing nails which might have remained.
On August 14, 1959, during the absence of her husband, Mrs. Hurley undertook the task of mowing the grass in their yard with the power mower which she and her husband had purchased from J. C. Penney Company. While mowing the yard, Mrs. Hurley was suddenly struck in the eye by some object, which resulted in the loss of her eye. It is contended by the petitioners that the object which struck Mrs. Hurley was one of the roofing nails which they alleged was "negligently allowed to remain by defendant Russell". They claim Mr. Russell to be liable in damages, along with J. C. Penney Company, the latter allegedly being negligent in selling petitioners "a defectively designed lawn mower which would propel foreign objects backward in such fashion as to pose a serious threat to the life and health of the operator of the lawn mower". The Lower Court held that there was no negligence on the part of either of the defendants and, accordingly, dismissed the petitioners' action. The petitioners have taken this appeal.
As to the claim by the petitioners against their landlord, it appears that this action is predicated upon the provisions of Article 2315 of the LSA-Civil Code which creates liability upon those who, by their fault, causes injury to another. The Lower Court held that, under the jurisprudence and the law of this State, Mrs. Hurley could not be considered as a tenant of Mr. Russell. The landlord-tenant contract existed between Mr. Hurley and Mr. Russell, and, as was held in Morris v. Hava, La.App., 180 So. 216, the wife of a tenant is considered as a third person. Being a third person, there is no contractual relationship between she and the landlord. This action cannot be based upon the liability set forth under Articles 670 or 2322 of the LSA-Civil Code, as such Articles referred to injuries caused by the fall or defects in a building. Thus, it appears that the only basis upon *447 which Mr. Russell could be held liable would be under the provisions of Article 2315. We are, therefore, faced with the question as to whether Mr. Russell was guilty of any fault, or negligence, which resulted in the loss of Mrs. Hurley's eye.
The record discloses, and it was held by the Lower Court that Mr. Russell had no knowledge that the petitioners owned a power mower. Ordinary care was used in making the repairs to the roof of the house. The testimony shows that the greatest of care was exercised in an attempt to clean the yard of all foreign objects which may have been left after completion of the repairs. Several witnesses testified that the yard was cleaned by raking, and that they had actually gotten on their hands and knees to be sure that all objects had been cleaned up. Certainly, we feel, that the utmost of caution was taken in this respect.
Subsequent to the repairing of the roof and cleaning the yard as aforesaid, the son of Mr. Russell had mowed a portion of the yard which was occupied by Russell's sister-in-law who was the tenant in the other half of the residence. The boy did not cut the grass on the side of the yard occupied by the plaintiffs herein. However, subsequent to the accident in question, the boy testified that he did cut the side occupied by the plaintiffs, and that he had no difficulty with foreign objects in the grass.
At the time of the accident in question, Mrs. Hurley claims she was cutting the grass on her side of the house in a recessed area which is formed by the protrusion of what the witnesses called a covered porch. Suddenly a foreign object struck Mrs. Hurley in the eye, and she immediately went to Mrs. Wade, who occupied the other half of the house, to request that she be taken to the hospital. Mrs. Wade testified that Mrs. Hurley told her that she had been hit in the eye by a rock. Evidently the object first stuck in Mrs. Hurley's eye, as she testified that she pulled it out and dropped it to the ground, immediately after the accident, however, she did not recall what the object was. Her first discussion with Mr. Russell, which was on the way to the hospital, was to the effect that the object was a rock.
The petitioners base their contention upon the fact that Mr. Hurley, on the day following the accident, found approximately a dozen roofing nails situated under the grass at about the spot where Mrs. Hurley was allegedly mowing at the time of the accident. There is some dispute, as to exactly where the mower was located at the time of the accident. Mr. Russell claims that his inspection of the premises shortly after the accident discloses that the grass had not been cut at the location where the Hurleys claimed that they found the roofing nails. None of these nails have been produced in evidence. They claim that the only way they found these nails was by getting down and parting the grass with their hands.
The Lower Court failed to find any fault on the part of defendant Russell which resulted in this accident. We feel that the Lower Court was correct in this decision. Under the law, defendant Russell was under a duty to use ordinary and reasonable care to clean up the debris left from his roofing repairs. Ordinary care is reasonable diligence and the exercise of good judgment. We feel that the defendant Russell did exercise at least reasonable care in the clean-up operations following the repairs to the roof. Certainly he did everything that would have been performed by a prudent administrator in the cleaning of the yard. The petitioners seek to have us decide that the said defendant was grossly negligent in leaving roofing nails lying around to be picked up and thrown by her power mower. There is no proof to the effect that the object which struck Mrs. Hurley in the eye was a roofing nail. This is only a presumption on the part of the petitioners, and the record is absolutely without proof as to exactly what was the object which caused the damage. There were trees in the yard, and the object could very *448 well have been a portion of a tree branch or twig. Certainly we cannot say that the defendant Russell was guilty of any negligence which caused the accident, as there is no proof in the record that the object was a roofing nail, or that said defendant could have reasonably foreseen such an accident, or that there was any negligence whatsoever on the part of the said defendant. There is no proof in the record that defendant Russell even knew that the Hurleys had a power mower. The petitioners have failed to prove any negligence on the part of defendant Russell, and we feel that the Lower Court was correct in dismissing the suit against him.
As regards the claim against J. C. Penney Company, the petitioners allege liability on the part of this defendant in selling petitioner a highly dangerous instrumentality and in representing to petitioners that "it was safe to operate said mower without removing all foreign objects from the lawn, such as a small roofing nail, when in truth and in fact it was extremely dangerous to operate said mower if there were any foreign objects contained on the lawn, regardless of size". In the instructions which came with the mower we find the following:
"Before mowing your lawn make a quick inspection removing all large sticks, bones, stones, or other foreign objects that may have accumulated since previous cuttings."
The petitioners contend that there was a defect in this mower which was known by J. C. Penney Company and which defect consisted in the ability of the mower to throw an object backward into the face of the operator. They contend that this defect was of such a nature as to come under the provisions of Article 2545 of the LSA-Civil Code which provides as follows:
"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of the expenses, is answerable to the buyer in damages."
The mower was made by the Power Equipment Company, Inc. It was an ordinary power type mower with a discharge chute at its right front end. Except for this discharge chute, there was an apron which completely circled the mower and which extended below the level of the blade. There is no evidence in the record that there is any substantial difference in the overall design and construction of this mower from any other small mower of a similar type. There is no evidence whatsoever in the record to show that there was a defect or vice in this mower. The point being made was on the assumption on the part of plaintiffs which resulted from the accident in question.
With reference to the instructions contained in the booklet which came with the mower, the Lower Court said that there is nothing in the language and there is no proof that the Penney Company salesman said anything to influence petitioners to disregard "other foreign objects". The adjective "large" modifies "sticks, bones and stones," but it does not modify "other foreign objects". Therefore, the grammatical construction of that clause shows that "all other foreign objects" should be removed.
Article 2545 of the LSA-Civil Code which is quoted above places liability upon the vendor who omits to declare a known vice to the purchaser of the thing he sells. J. C. Penney Company was not the manufacturer of these mowers and they knew of no vice in the mower. As a matter of fact, the petitioners have failed to prove that there was a vice in the mower, and we fail to see how J. C. Penney Company can be held liable in damages to the petitioners. The Penney Company was shown to have been in good faith and, therefore, the only claim against them would be in redhibition as set forth in Article 2529 of the LSA-Civil Code.
As we have stated above, the record does not show what was the cause of this unfortunate accident. The Lower Court stated in its opinion that it was entirely likely *449 that the mower did throw some object against a concrete pillar of the petitioner's residence causing this object to richochet back into the eye of Mrs. Hurley. Although this is very likely what happened, it is only a presumption, as the record is most indefinite as to the location of the mower at the time of the accident. We feel that the petitioners have failed to sustain their burden of proving their action by a preponderance of the evidence. No negligence has been shown on the part of the defendant Russell, and no liability has been proven on the part of J. C. Penney Company.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioners.
Judgment affirmed.