CHASEZ, Judge.
Plaintiff-appellant James Merwin filed this suit on his own behalf and on behalf of his minor son James Merwin, Jr., for injuries to his son caused by drinking a product known as New Magic Jet-X Suds, a car wash product. This car wash product had been purchased by Merwin, Sr. from the defendant, D. H. Holmes Co., Ltd.
The defendant met plaintiff’s suit with an exception of no cause of action which was sustained by the trial judge. Plaintiff now brings this appeal from that judgment of the trial court.
As this matter is before us on the exception of no cause of action, we must consider only the well-pleaded facts as set out in plaintiff’s petition, and for the purposes of our consideration we must assume them as true. O’Rourke v. O’Rourke, 50 So.2d 832, La.App.Orl., 1951.
*879 The paragraphs of plaintiff’s petition pertinent to our decision are as follows:
“II.
“Defendant, D. H. Holmes Company, Limited, placed upon the market for sale to the general public a certain New Magic Jet-X Suds which was intended to be used as a car wash product, and which was purchased by plaintiff from defendant for the stipulated price, to be used for said purpose.
“HI.
“Defendant knew or should have known that this product would be used without inspection for defects, and by placing it upon its premises for sale, Defendant warranted that it was merchantable and reasonably safe and suitable for the purpose of its intended use.
“IV.
“The product was unsafe for public use for the reason that is contained dangerous poisons against which the general public was not warned.
“V.
“On or about April 23, 1967, while plaintiff was using the said New Magic Jet-X Suds for the purpose in which it was intended, plaintiff’s minor son, James Merwin, Jr., consumed a small amount of New Magic Jet-X Suds, which product had been purchased from defendant.
“VI.
“As a result of ingesting said product, plaintiff’s minor son immediately began to cry with pain and became drowsy, at which time he was rushed to Mercy Hospital.”
LSA-C.C. art. 2545 provides the basic liability of a vendor for injuries suffered by his vendee caused by the thing sold, as follows:
“Art. 2545. Liability of seller for con-concealment of vice.
“Art. 2545. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys’ fees, is answerable to the buyer in damages.”
We can see from this article that the vendor is only liable when there is a vice in the product and then only when the vendor knows of the vice and omits to declare it. Coignard v. F. W. Woolworth & Co., 175 So. 123, La.App.Orl., 1937; Hurley v. J. C. Penny Company, 140 So.2d 445, La.App. 1 Cir., 1962.
In paragraph III of his petition quoted above plaintiff averred defendant “knew or should have known that this product would be used without inspection for defects.” However this declaration falls short of allegation that the product was defective and that defendant knew of this defect. Further by reading the preceding paragraphs we find that the thrust of plaintiff’s claim is that the product was inherently dangerous, when used in a manner for which it was not intended. We are of the opinion that this is not a vice in the product contemplated by LSA-C.C. art. 2545.
Plaintiff argues in his brief filed with this court that it was sufficient for him to allege that the product contained dangerous poisons, hence was inherently dangerous, and that defendant failed to warn the general public of this danger, to state a cause of action. We can find no support for this position in our jurisprudence.
As we appreciate plaintiff’s position he would have the vendor of any product, which might cause harm if used in a manner other than for which it was intended, answerable in damages for injuries resultant from this unintended use. Plaintiff *880 argues that it is incumbent upon such a vendor, to escape this liability, to warn his vendee of the danger which the unintended use might bring. The fallacy in this position as it appears to us is clear. The vendee here, even absent a warning from his vendor, did not have the right to expect that, without harmful effects, he could use a car wash product for human consumption. A warning therefore would have served only to tell the vendee something he already obviously knew or should have known. Further such a warning would have been even more useless to his small child who obviously could not have read the warning had it been present.
We note the decisions of Hake v. Air Reduction Sales Co., 210 La. 810, 28 So.2d 441 (1946) and Home Gas & Fuel v. Mississippi Tank Co., 246 La. 625, 166 So.2d 252 (1964), involving highly dangerous products, which used tort-negligence theories to recognize a cause of action against manufacturer-vendors for damgaes caused by the defects in their products. We are not willing to extend the rationale in these cases to the situation here involving the vendor of the product solely.
Plaintiff relies heavily on the decision in Spruill v. Boyle-Midway, Incorporated, 4 Cir., 308 F.2d 79 (1962), wherein the court, applying the substantive law of the State of Virginia, rendered judgment against the manufacturer and the distributor of a furniture polish, for the death of a minor who consumed a portion of the highly poisonous, thus inherently dangerous polish. While that decision was proper under the existent laws of the State of Virginia, we find that it is not authority for plaintiff’s position herein, where our Civil Code specifically provides for the liability of a vendor in this area.
For the reasons hereinabove stated the judgment of the trial court dismissing plaintiff’s suit on an exception of no cause of action is affirmed, appellant to pay all costs of this appeal.
Affirmed.