370 So.2d 202 (1979)
Elaine REEVES, Individually and as natural tutrix of her minor son, John Reeves, Plaintiff-Appellee-Appellant,
v.
The GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., et al., Defendants-Appellants-Appellees.
No. 6895.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1979.
Writs Refused June 1, 1979.
*204 William P. Polk, Gold, Little, Simon, Weems & Bruser, Edward E. Rundell, Alexandria, for defendant-appellant.
Broussard, Bolton & Halcomb, Roy S. Halcomb, Jr., Alexandria, for plaintiff-appellee.
Sessions, Fishman, Rosenson, Snellings & Boisfontaine by Walter C. Thompson, Jr., New Orleans, for defendant-appellee.
Before DOMENGEAUX, SWIFT and DOUCET, JJ.
DOMENGEAUX, Judge.
On June 21, 1977, plaintiff, Mrs. Elaine Reeves, purchased a 32-ounce bottle of Coca-Cola from a supermarket in Alexandria, Louisiana, owned and operated by The Great Atlantic & Pacific Tea Company, Inc., hereinafter referred to as A & P, for the sum of forty-five cents. She brought the bottle of Coca-Cola home and placed it into her refrigerator. Later that night, her minor son, John Reeves, who had returned from playing a little league baseball game, went into the refrigerator and obtained the bottle of Coke.
After opening the bottle and drinking from it, he found that it smelled and tasted badly. Almost immediately, he started regurgitating and felt ill.
Both Mrs. Reeves and her son examined the bottle of Coke and held it up to the light. They discovered that there were foreign objects floating around in the liquid. Mrs. Reeves recapped the bottle, placed it into the refrigerator, and brought it to her attorney some days later.
*205 On October 3, 1977, Mrs. Reeves filed suit on behalf of her minor son in order to recover for the injuries sustained by him as a result of drinking the contaminated bottle of Coke. Made defendants were A & P, the Alexandria Coca-Cola Bottling Company, Ltd., hereinafter referred to sometimes as the bottler or the bottling company, and the Coca-Cola Company. On March 23, 1978, an amending petition was filed in which Mrs. Reeves appeared individually and as the administrator of the estate of her minor child, John, in order to add an additional demand for rescission of the sale of the soft drink, and for attorney's fees. On May 16, 1978, a second amending petition was filed, reiterating her demands for rescission.
A problem was presented, however, with regard to Mrs. Reeves' right to bring a cause of action on behalf of her minor son because, although divorced from her husband and having custody of John, she was not appointed the child's natural tutrix. Pursuant to this end, she petitioned for and finally was appointed the natural tutrix of John on May 24, 1978.
On May 17, 1978, A & P filed a third party demand against the Coca-Cola Company and the Alexandria Coca-Cola Bottling Company, Ltd., in order to recover any amounts which it would be liable to pay to the plaintiff.
After several procedural preliminary matters were resolved, none of which are involved in this appeal, the case proceeded to trial. The trial judge found that plaintiff proved her case in order to recover for the personal injuries of her minor son. He assessed personal injury damages, however, only against the Alexandria Coca-Cola Bottling Company, Ltd., as the manufacturer of the soft drink. However, he found that A & P would be liable for return of the purchase price under a redhibitory theory of recovery to Mrs. Reeves individually. On the same theory, he found that the Alexandria Coca-Cola Bottling Company, Ltd., as the manufacturer, would be liable also for return of the purchase price of the soft drink, and, additionally, for attorney's fees. He found that the Coca-Cola Company was simply the manufacturer of the syrup and, inasmuch as there was no proof that the defect in the final product was as a result of the syrup, and inasmuch as there was no proof of negligence on the part of the Coca-Cola Company, he absolved them from liability in tort and, also, from liability in redhibition.
Accordingly, judgment was entered in favor of the Coca-Cola Company, and against the plaintiff, dismissing her demands against that defendant; judgment was rendered in favor of the plaintiff and against A & P and the Alexandria Coca-Cola Bottling Company, Ltd. in solido, for return of the purchase price of the soft drink; and judgment was entered in favor of plaintiff and against the Alexandria Coca-Cola Bottling Company, Ltd. for $2,500.00 attorney's fees. Additionally, the Alexandria Coca-Cola Bottling Company, Ltd. was found liable for $300.00 for the personal injuries sustained by John Reeves. The bottler was cast for all costs.
From this judgment, Mrs. Reeves, the Alexandria Coca-Cola Bottling Company, Ltd., and A & P, all appeal. Additionally, Mrs. Reeves answers the appeal filed by the Alexandria Coca-Cola Bottling Company, Ltd. The Coca-Cola Company answers the appeals of both Mrs. Reeves and A & P.
Numerous issues are raised in this case; however, at the outset, we feel it necessary to comment upon some of the peculiar aspects of this litigation. In her pleadings, Mrs. Reeves urged two demands. She originally sued in tort for the recovery of the personal injury damages sustained by her minor son as a result of the ingestion of an unwholesome food product. Additionally, she added a claim in redhibition against the immediate vendor, A & P, and the alleged manufacturers, the Alexandria Coca-Cola Bottling Company, Ltd., and the Coca-Cola Company, contending that the thing sold, a bottle of Coca-Cola, contained a latent defect entitling her to rescission of the sale damages, and attorney's fees under La.C.C. Art. 2545.
The inclusion of the redhibitory claim is somewhat unique because, prior to *206 the landmark decision of Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377 (1972), this type of case would always be couched in terms of products liability in tort.[1] By suing in tort, the victim proceeds directly against the manufacturer of the defective product in order to recover for his injuries. He must prove that the product is defective, i. e. unreasonably dangerous for normal use, and that his injuries were caused by the defect. The plaintiff need not prove any particular act of negligence; he is assisted by the presumption that the manufacturer is presumed to know of the defects in the thing he makes. Weber v. Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971); Lachney v. Motor Parts & Bearing Supply, Inc., 357 So.2d 1277 (La.App. 3rd Cir. 1978).
Prior to the Media decision, the use of the redhibitory action to a plaintiff who was injured by a defective product was of little utility. The remedy was against the seller of the product and not the manufacturer. If the seller did not know that the product sold was defective, plaintiff's relief was restricted to rescission of the sale, return of the purchase price, expenses of the sale, and expenses incurred in preserving the thing sold. C.C.Art. 2531. Only if it could be shown that the seller knew of the defect, could plaintiff recover damages, and, since a 1968 amendment to C.C.Art. 2545, attorney's fees. Additionally, the plaintiff would have to show that he was a purchaser, and there could be some question as to what "damages" are contemplated by C.C. Art. 2545.
This situation changed somewhat, however, beginning with the Media decision. That case, and its progeny, most notably Rey v. Cuccia, 298 So.2d 840 (La.1974), put to rest any requirement of privity as between the purchaser of the defective product and the manufacturer of that product in a suit to recover under the Codal articles on redhibition. Thus, under Media, a buyer would be allowed to proceed directly against the manufacturer of a defective product in redhibition, thereby removing one of the factors that would have restricted a plaintiff injured by a defective product, namely, limitation of potential defendants to the immediate seller. Additionally, inasmuch as the manufacturer is presumed to know of the defect in the product he manufactures, the manufacturer will be almost invariably a bad faith seller, thereby entitling the purchaser to damages and attorney's fees under C.C.Art. 2545. It would seem, therefore, that, in light of Media, suit in redhibition would be the preferred route in which to proceed when injury is caused by a defective product because a prospective plaintiff could get attorney's fees, which could not be awarded if he proceeded in tort.
*207 Nevertheless, the redhibitory path is not clear.[2] There are two significant questions remaining unanswered, viz.:
1. Are the damages awardable under C.C.Art. 2545 in redhibition the same as are awardable in tort under products liability; and
2. If it is not necessary that the defendant in a redhibitory suit be the actual seller, is it necessary that the plaintiff be the actual purchaser?
Although this case came close, these questions actually are not presented here. In our suit, the actual purchaser of the defective product is Mrs. Reeves, who does not claim any injuries on her own behalf, but only on behalf of her minor son. Thus, the first question, concerning the type of damages awardable in the redhibitory suit against the manufacturer, is not presented because the minor's damages can be awarded on a tort basis.
The second question, concerning whether a redhibitory suit can be maintained by one other than the immediate purchaser, is also not presented because it is the actual purchaser, Mrs. Reeves, who is maintaining the redhibitory action and seeking attorney's fees, independent of the personal injury demand made on behalf of her minor son. Although ostensibly this suit appears to award attorney's fees in a products liability case, it actually does not. Attorney's fees are awarded only on the basis of Mrs. Reeves' demand for rescission. Personal injury damages are awarded separately on a tort theory.
We specifically point out that in order to resolve the complicated legal issues arising from the substantial overlap between the law of products liability and the law of redhibition, other factors would have to be present in this case. For example, had tender of the purchase price of the product been made to Mrs. Reeves prior to filing suit, the question of whether suit could be maintained on behalf of the son against the manufacturer under a redhibitory theory, and, consequently, whether attorney's fees could be allowed, would be presented. Alternatively, had Mrs. Reeves sustained her own personal injuries by use of the defective product, and tender of only the purchase price and no personal injury damages been made, the question of what damages are awardable by C.C.Art. 2545, would arise. These factors are not present here.
Having concluded our discussion of these preliminary matters, we now proceed to the specific issues presented by this case. We will discuss separately the claim for personal injury damages to the minor in tort and the claim for rescission and attorney's fees in redhibition.

I. TORT CLAIM
The Alexandria Coca-Cola Bottling Company, Ltd. argues that plaintiff failed to discharge her burden in proving that the cause of her son's illness was the ingestion of a contaminated Coke. Apparently, there is no dispute on appeal with regard to the fact that the Coke contained a foreign ingredient at the time her son drank from it.
To support its proposition, the bottler correctly points out several facts contained in the record. The evidence shows that John had eaten a hamburger and french fries prepared in the home by Mrs. Reeves in the late afternoon of June 21, 1977. Shortly thereafter, John left to play a little league baseball game, which lasted until approximately 8 P.M. John's team won, and they were treated to free Cokes at a local restaurant. However, John did not drink much of his Coke because he felt overheated. He returned home and obtained the bottle of Coke from his mother's refrigerator, broke open the seal, and took a swallow from it. Immediately thereafter, he began to regurgitate and, within twenty minutes, he developed a fever of 101 degrees.
From this evidence, the bottling company argues that the more likely cause of the injury was the result of consuming a hamburger *208 and french fries immediately prior to engaging in the baseball game during the middle of the summer, or that the boy had some illness developing within him prior to drinking the Coke, which only manifested itself after ingestion of the drink. As further support of this latter theory, the bottler points out that it is highly unlikely that a healthy boy would refuse a free Coke after playing a baseball game, and that the development of a 101 degree temperature within twenty minutes after the ingestion of a foreign substance was physiologically unlikely.
The bottler also points out that the sales slip from the A & P store indicates that the beverage was purchased on May 18, 1977, rather than June 21, 1977. It apparently maintains that this discrepancy indicates that the drink was purchased and consumed before June 21, 1977, and, that the boy's illness on June 21, 1977, was for a reason other than consuming the bottle of Coke in question.
We reject the bottler's arguments. In the leading products liability case, Weber v. Fidelity & Casualty Company of New York, supra, the Supreme Court specifically addressed itself to the burden of proof in showing causation in a products liability suit. It was there stated:
"In this civil case, the plaintiffs' burden is to prove causation by a preponderance of the evidence. This burden may be met either by direct or, as in this case, by circumstantial evidence. Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971); Naquin v. Marquette Cas. Co., 244 La. 569, 153 So.2d 395 (1963).
As we stated in the latter decision, 153 So.2d 397: `Taken as a whole, circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes. Otherwise, the mere identification by the record of another possibility, although not shown to be causally active, would break the chain of causation.'"
250 So.2d at page 757.
We think that, under the circumstances presented in this case, the most logical explanation for the son's illness was the ingestion of the contaminated bottle of Coca-Cola. Although the hypotheses offered by the bottler in order to explain the illness in terms other than the ingestion of the Coke are reasonable, we feel that the trial judge was correct in finding that the preponderance of the evidence in this case rested with the plaintiff.
We also note that the trial judge did not attach much significance to the fact that the sales receipt was dated May 18, 1977, rather than June 21, 1977, and we agree. Mrs. Reeves was unwaivering in her testimony that the Coke was purchased on June 21, 1977. Other evidence indicated that the date appearing on the register receipt could be inaccurate.
The bottler also maintains that the amount of damages awarded on behalf of the minor, John, were not proven. On the other hand, plaintiff argues that the amount of damages should be increased.
The trial judge awarded $300.00 in personal injury damages on behalf of the minor. The record shows that the child became ill and started vomiting immediately after the consumption of the Coke. He ran a temperature and spent a restless night, with nausea and stomach pains. The stomach pains continued into the next day, and John also developed diarrhea. Although his mother contacted a physician by telephone, the physician did not feel that an office or hospital visit was necessary, unless complications developed. The mother administered over-the-counter medication to the son in order to relieve his stomach pains and diarrhea. By the second day after the ingestion of the Coke, John returned to normal and went about his regular activities.
Under the circumstances presented, we feel that the $300.00 awarded by the trial judge for John's pain and suffering is neither excessive nor inadequate. Accordingly, it will be affirmed.
In her brief, Mrs. Reeves seeks judgment against all three defendants for all amounts *209 awarded. We will discuss the award of return of the purchase price and attorney's fees with reference to this contention in the section of this opinion dealing with redhibition. We will discuss the award of personal injury damages presently.
It is well established in Louisiana that the manufacturer of a product, which involves the risk of injury to the user, is liable to any person, who, without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the product, if the injury reasonably might have been anticipated. Weber v. Fidelity & Casualty Company of New York, supra, and cases cited therein. The non-manufacturer seller of a defective product is not responsible for damages in tort, absent a showing that he knew or should have known that the product sold was defective. Spillers v. Montgomery Ward & Company, Inc., 294 So.2d 803 (La. 1974); Demars v. Natchitoches Coca-Cola Bottling Company, Inc., supra; McCauley v. Manda Brothers Provisions Company, Inc., 202 So.2d 492 (La.App. 1st Cir. 1967), affirmed 252 La. 528, 211 So.2d 637 (1968). The mere supplier of a component part of a finished product is not liable for damages in tort, absent a showing that the injury was caused by a defect contained in the component part, rather than a defect contained in the finished product. Andry v. Canada Dry Corporation, Division of Norton Simon, Inc., 355 So.2d 639 (La.App. 4th Cir. 1978), writ denied 357 So.2d 1167 (La.1978).
It is our opinion that the trial judge was not in error by holding only the Alexandria Coca-Cola Bottling Company, Ltd., responsible for the personal injury damages in this case.
The record shows that the bottle of Coke was in a sealed condition up to the time that John opened it. The evidence offered by the A & P Company, from which the Coke was purchased, indicated that their employees did not inspect sealed containers of foodstuffs and, therefore, it is obvious that A & P did not have knowledge of the contaminates contained in the bottle. Further, we think that A & P reasonably could rely on the assumption that sealed containers of foodstuffs obtained from reputable dealers were not contaminated. Since A & P neither knew nor should have known that the bottle of Coke in question was defective, the trial judge properly relieved it from liability in tort.
With regard to the Coca-Cola Company, the evidence shows that it merely supplied its syrup to the bottler and licensed the bottler to use its trademark. There was no evidence proving that the syrup supplied by the Coca-Cola Company was defective or that the company was negligent.
Some attempt was made by plaintiff to hold the Coca-Cola Company liable for damages on the basis that "Coca-Cola" is a trademark of the Coca-Cola Company and that the finished product was held out as being a product of the Coca-Cola Company. However, we do not think that there is sufficient evidence in the record which would allow the imposition of liability on this basis. For example, the magnitude of advertising and promotional activities conducted by the Coca-Cola Company was not revealed. Although the bottling contract was contained in the record, the provisions dealing with Coca-Cola's control over the finished product were very vague. The actual day to day relationship between the Coca-Cola Company and the bottler was unclear. Under the facts presented in this particular case, we do not feel that the Coca-Cola Company can be held liable.[3]
On the other hand, the evidence shows that the bottler was responsible for securing clean bottles for the finished product, *210 for assembling and mixing the various component parts of the soft drink, and for sealing and distributing it. We think it abundantly clear that the Alexandria Coca-Cola Bottling Company, Ltd. was the manufacturer of the finished product of the bottled Coca-Cola beverage. As the manufacturer, it was the party responsible for the personal injury damages sustained by John and was properly cast for such.

II. REDHIBITORY CLAIM
As noted above, Mrs. Reeves sought, and was awarded, rescission of the sale, return of the purchase price, and attorney's fees under a redhibitory theory. The trial judge found that the bottle of Coke contained a latent defect at the time of purchase. He determined that Mrs. Reeves was entitled to return of the purchase price from the seller of the product, A & P, and the manufacturer of the product, the Alexandria Coca-Cola Bottling Company, Ltd. A & P was found to have no knowledge of the defect of the Coke at the time of the sale. Accordingly, its liability was limited to rescission of the sale and return of the purchase price under Article 2531 of the Civil Code. The Alexandria Coca-Cola Bottling Company, Ltd. was found to be the manufacturer. It was held solidarily liable with A & P for rescission of the sale and return of the purchase price. Additionally, since it was presumed to have knowledge of the defect, it was found liable for $2,500.00 attorney's fees under Article 2545 of the Civil Code.
The Coca-Cola Company was found to be the manufacturer of merely a component part, the syrup, from which the final product, the bottled beverage, was made. Since it was neither a manufacturer nor a seller, the Coca-Cola Company was not held liable in redhibition.
Both the bottler and A & P contend that Mrs. Reeves cannot recover in redhibition because the defect or vice in the beverage was apparent.
We feel that the evidence in this case clearly indicates that the objects floating in the Coke bottle could not be seen readily.
Neither Mrs. Reeves nor her son saw anything wrong with the beverage until after John drank it. Mrs. Reeves testified that in order to see the objects in the bottle, it was necessary to hold it up to the light in a certain fashion. She stated that sometimes the objects in the bottle were visible and sometimes they were not, depending upon how the light struck the contents.
Additionally, the bottle of Coke, with the contaminates in it, was introduced at trial, and the trial judge had the opportunity to inspect it. He made the specific factual determination, in his written reasons, that the defect was not apparent. Under these circumstances, we do not find manifest error in his factual conclusion that the defect was latent.
The bottler also raises the argument that Mrs. Reeves' failure to call as witnesses three persons, who were guests in her home at the time John drank the contaminated Coke, should create a presumption against her. Although this may be correct, Mrs. Reeves' failure to call the witnesses was not unexplained. She stated during her testimony that the guests were never shown the contaminated Coke. She simply put the bottle away into the refrigerator and suggested that they not drink from that particular bottle. The bottler argues that it is improbable that three people sitting in the same room where the incident occurred would not have been shown or would not have made an effort to look at the bottle in order to see if there was anything in it. However, this argument goes to the weight and credibility of Mrs. Reeves' testimony. Considering the totality of evidence in this case, we do not feel that the adverse presumption drawn against Mrs. Reeves would be sufficient to justify a reversal of the trial court's findings on appeal.
We now move to plaintiff's contention that all defendants should be liable for all amounts. We have previously discussed this contention with regard to products liability, and now we determine who was responsible in redhibition. Under the current *211 state of the law in redhibition, both the manufacturer and seller of a thing containing a redhibitory vice are responsible.
There is no question that A & P sold the bottle of Coke. However, as previously discussed, A & P did not know of the vice at the time of the sale. Their liability is governed by C.C.Art. 2531, which provides, inter alia, for restoration of the purchase price, reimbursement of the reasonable expenses of the sale, and reimbursement for the expenses incurred for preservation of the thing. In this case, there are no claims for reimbursement of the expenses of the sale and for expenses of preservation. Therefore, A & P is liable only for return of the purchase price of the Coke, which is $0.45.
We have already determined that the Alexandria Coca-Cola Bottling Company, Ltd. is the manufacturer of the bottled beverage. As the manufacturer, it is presumed to know of the vice in the thing it manufacturers. Its liability, therefore, is governed by C.C.Art. 2545, which provides for restitution of the purchase price, repayment of the expenses of the sale, repayment of the expenses of preservation, damages, and attorney's fees. Since no claims for damages, expenses of the sale, or expenses of preservation are made by Mrs. Reeves, the Alexandria Coca-Cola Bottling Company, Ltd. is responsible for only return of the purchase price of the Coke, and attorney's fees.
In summary, both A & P, the seller, and Alexandria Coca-Cola Bottling Company, Ltd., the manufacturer, are liable, in solido, for return of the $0.45 purchase price of the Coke. Rey v. Cuccia, supra; Breaux v. Winnebago Industries, Inc., 282 So.2d 763 (La.App. 1st Cir. 1973). Additionally, the Alexandria Coca-Cola Bottling Company, Ltd. is liable for attorney's fees.
However, we have some question with regard to the amount of attorney's fees awarded. The trial judge set the fees at $2,500.00. In his written reasons, it was specifically pointed out that attorney's fees were being awarded solely on the basis of the redhibitory action and not on the basis of the tort action. Further, several aspects of both the redhibitory and tort claims were common and intertwined with each other. Considering all the circumstances involved in this case, including the fact that the bill introduced for services rendered by plaintiff's counsel at the time of trial is in an amount significantly less than $2,500.00, and including the fact that recovery on the redhibitory claim is only for $0.45, we feel that an award of $1,500.00 for attorney's fees would be more equitable under the situation presented. The judgment will be amended accordingly.
With regard to the responsibility of the Coca-Cola Company in redhibition, a problem is presented. Plaintiff argues that the law enunciated in Media is authority for holding the Coca-Cola Company liable. We do not feel that Media is applicable to the present situation. In Media, the Supreme Court found that the North American distributor of a defective Mercedes-Benz automobile had, for purposes of redhibition, the same responsibility as that of the manufacturer. In so doing, the Court specifically noted the following:
"The maker of Media's [the purchaser's] vehicle is a foreign corporation, not qualified to do business in the United States. In its distribution agreement, MBNA [Mercedes-Benz of North America, Inc.] assumes the total responsibility for marketing the cars in the United States and for selling, servicing, and establishing franchise dealerships. Its name appears upon the Dealers Claims Policies and Procedures Manual, the owner's service policy, and the owner's automobile manual.
It operates a vehicle distribution center and inspects, adjusts, and prepares the automobiles for placement in the hands of a dealer for retail sale."
262 So.2d at page 380.
In our case, there is no showing that the Coca-Cola Company assumed responsibility for the finished product. The Coca-Cola Company does not operate any bottling companies in the United States. As noted *212 previously, although the bottling contract between the Coca-Cola Company and the Alexandria Coca-Cola Bottling Company, Ltd. was introduced into evidence, the provisions dealing with Coca-Cola's control over the finished product are vague. The day to day working arrangement between the Coca-Cola Company and the bottler was not explored in detail. Further, evidence concerning the extent of advertising and promotional campaigns conducted by the Coca-Cola Company was not disclosed.
Additionally, in Media, the North American distributor occupied an intermediate position between the purchaser and the actual manufacturer. In our case, the Coca-Cola Company does not occupy an intermediate position. Furthermore, it should be noted that the actual manufacturer of the automobile in Media was not qualified to do business in the United States and probably was not amenable to process. In our case, the Alexandria Coca-Cola Bottling Company, Ltd. is a Louisiana corporation, and is amenable to process.
Considering the lack of specific evidence and other circumstances presented by this case, we cannot hold the Coca-Cola Company liable.
A & P raises the contention that, if it is responsible to Mrs. Reeves for return of the purchase price, it is entitled to recovery of this amount against the Alexandria Coca-Cola Bottling Company, Ltd. Pursuant to this end, it made a third party demand at the trial level; however, the trial judge failed to rule on this demand. A & P is entitled to judgment on their third party demand against the bottling company. Breaux v. Winnebago Industries, Inc., supra.
The final matter in this case deals with the request by plaintiff, in her appellate answer, for an increase in attorney's fees for the services rendered on appeal.
An increase in attorney's fees for services rendered on appeal is usually awarded when the defendant appeals and obtains no relief on appeal, and when the plaintiff requests it in accordance with proper appellate procedure. The basis for awarding additional attorney's fees is that the litigant successful at the trial level must incur additional expenses, which otherwise would not have been incurred, in order to protect his rights on appeal. In this case, plaintiff is not only protecting her rights on appeal, but she is also seeking additional relief denied at the trial level and denied on appeal. Under these circumstances, we find that additional attorney's fees for services rendered on appeal are not warranted. Conlay v. Houston General Insurance Company, 370 So.2d 196 (La.App. 3rd Cir. 1979).
For the above reasons, the judgment of the District Court is amended in order to enter judgment herein in favor of The Great Atlantic & Pacific Tea Company, Inc., and against the Alexandria Coca-Cola Bottling Company, Ltd., in the sum of $0.45, together with legal interest from date of judicial demand until paid. The judgment is also amended in order to reduce the amount of attorney's fees awarded to Elaine Reeves from the sum of $2,500.00 to $1,500.00. In all other respects, the judgment of the District Court is affirmed. Costs on appeal are assessed one-half against plaintiff, Elaine Reeves, and one-half against defendant Alexandria Coca-Cola Bottling Company, Ltd.
AFFIRMED AS AMENDED.
NOTES
[1] We are aware of only one other case in which a redhibitory theory was used in a suit for personal injuries resulting from a defectively bottled soft drink, and that case arose after Media. In Demars v. Natchitoches Coca-Cola Bottling Co., Inc., 353 So.2d 433 (La.App. 3rd Cir. 1977), writ denied 354 So.2d 1384 (La. 1978), plaintiff purchased and drank a bottled soft drink which contained particles of glass. She sued the seller of the drink, Morgan & Lindsey, Inc., and the manufacturer, Natchitoches Coca-Cola Bottling Co., Inc., seeking rescission of the sale of the soft drink, return of the purchase price, damages, and attorney's fees under C.C.Art. 2545. At the trial level, she received judgment for rescission of the sale, personal injury damages, and attorney's fees against both defendants. On appeal, we reversed and denied plaintiff recovery under a redhibitory theory, finding, as a matter of fact, that since the rim of the bottle containing the soft drink was chipped, the defect was apparent, and thus, redhibitory relief could not be granted. Instead, we awarded damages under a theory of breach of an implied warranty of wholesomeness. The end result of the case was that the judgment for attorney's fees and damages against the seller, Morgan & Lindsey, was reversed; the judgment for attorney's fees against the manufacturer, the Natchitoches Coca-Cola Bottling Company, Inc., was also reversed; but the judgment awarding personal injury damages against the Natchitoches Coca-Cola Bottling Company, Inc., was affirmed. We specifically note that Demars did not preclude the possibility of bringing a redhibitory suit against the seller and manufacturer of a defectively bottled soft drink. Redhibition was denied in Demars simply on the basis that the redhibitory vice was apparent.
[2] For an indepth discussion of the interesting problems presented by the overlap between products liability and redhibition see Robertson, Manufacturer's Liability for Defective Products in Louisiana Law, 50 Tul.L.Rev. 50 (1975).
[3] We are mindful of the Supreme Court's decision in Chappuis v. Sears Roebuck and Company, 358 So.2d 926 (La.1978), in which the seller of a defective hammer, Sears, was held to the same responsibility in products liability as the manufacturer of the hammer, Vaughan and Bushnell Manufacturing Company, partly because Sears held the hammer out to the public as its own. However, we find the relationship between Sears and Vaughan and Bushnell in Chappuis distinguishable from the relationship between the Coca-Cola Company and the Alexandria Coca-Cola Bottling Company, Ltd. as presented by the fact of this case.